Michael Cimbito and Paul Evan Coe May it please the Court, John Bogdanoff for the Appellant Jacqueline Spencer. The major issue in this deadly force excessive force case concerns the existence of a genuine issue of material fact precluding summary judgment as to whether the decedent, Marcus Spencer, posed an imminent threat of harm to the safety of the defendant officers which would have justified their use of deadly force in this case. The trial court granted summary judgment to the defendant officers and city on their qualified immunity defense, including that the record failed to show a violation of the decedent's constitutional right to be free from excessive government force. In doing so, the trial court overlooked significant evidence. The court relied on Officer Zambito's affidavit which averred that he saw the motor vehicle being operated by the decedent accelerate and move toward a fellow officer, Officer Florin, thereby jeopardizing Officer Florin's safety and justifying Officer Zambito's use of deadly force in shooting the decedent. I hate to get you off track, but it looked like to me that in the district court you disputed whether Mr. Spencer hit Officer Zambito's explorer and it seemed like to me on appeal you acknowledged that he had hit the explorer. Am I right about that? In the second stop, there were two stops as the court is probably familiar with. In the second stop or the second squeeze stop, it does appear that the decedent did hit the police vehicle, unmarked police vehicle. Okay. Mr. Carson had been an occupant of the vehicle being driven by the decedent and Mr. Carson stated in his deposition that after the second squeeze when the two unmarked police vehicles attempted to squeeze the decedent's vehicle, Mr. Carson stated that as a result of that squeeze play where the decedent's car was spun a bit, the vehicle became an operative. It would not start and it became disabled. As a result, Mr. Carson jumped out of the vehicle realizing that it was an operative and began to run away from the scene. Now this is entirely contradictory to Officer Zambito's affidavit where Officer Zambito states that he saw the vehicle accelerate and move towards his fellow officer, Officer Florin and that that was the reason, fearing for the safety of Officer Florin, that was the reason that he shot at the driver, the decedent, who was operating the vehicle. But under our cases, even if we assume that Carson has it right, you know, whether the testimony was sworn, unsworn, whatever the circumstances there are, even if we assume that his testimony controls here, is their law clearly establishing that there was an excessive force violation here? Well, if we accept the fact, based on Mr. Carson's testimony, that there was not an imminent fear of harm to the other officer, then we do believe that under the existing law that it would have been clear that the officer would not have had the right to use deadly force. And what are the cases, just so I'm clear, I've tried to sort of plop them for my own sort of note-taking purposes, but what are the cases that you think clearly establish? Several of the cases that we rely on include Morton v. Kirkwood and Vaughn v. Cox, which are both out of this circuit. And what we did on page four of our reply brief is we contrasted the various cases. It's basically, if you put the cases on a continuum, you have, and several of these cases were authored by Judge Marcus, so he's eminently familiar with them. You have McCullough v. Antolini. You have Robinson v. Agueda. And you have Pace v. Capo Bianco. In those cases, you had a motor vehicle that was operative, that was moving towards the officer or officers, and the officers, therefore, fearing for their own safety or the safety of a fellow officer, were forced to use deadly force in order to stop the- Doesn't your entire argument turn on the factual assertion that Zambino allegedly was aware that the Hyundai was inoperable and he fired anyway? That's the core of this, isn't it? Yes, that based on Mr. Carson's testimony, that would be, the jury could so find that- That's where I'm having difficulty and maybe you can help me. What is there about this fact pattern that would have fairly put the officer on notice that the Hyundai was inoperable, that it couldn't be used? Well, first of all, there's Mr. Carson's testimony that- He didn't say that the officers outside the car would have been aware of that, did he? No, he didn't, but we believe based on his testimony, that would create a jury issue What evidence would there be to suggest that the officer on the outside would know when the car had been moved, slammed into the car at an earlier point, allegedly jeopardized the life of an officer, say on round one, that on round two, after the car was squeezed in between these two police vehicles, that it couldn't be used and he couldn't hit the pedal. We do know the driver didn't follow the command of the officer, right? They said, you know, put your hands up and he reaches down, they don't know what he's reaching for. Well, we don't even know- That would not be in dispute, would it? I think it is. We don't know that he was even alive. That occurred after he had been shot at by Officer Zambito. Officer Zambito shoots at the driver, the decedent. After that, the decedent, according to Officer Ivanko, the decedent is slouching down. We believe there's an inference there that the decedent had been shot. By Carson's account, doesn't Spencer actually try to crank the motor? He tries to crank the motor- What does that mean, crank the motor? It's sort of an unusual way to put it. I'm not sure I know what crank the motor means. To turn the ignition on? And hit the pedal? I believe that's probably what he meant, is he attempted to turn the ignition and the car would not start. Because he does state that the car would not start, it had become an operative, and that's when he jumps out of the vehicle, because he realizes- We tried to start it up and couldn't. Correct. How is it that the officer on the outside, given everything that he knew before that, would have known that too? Well, we don't know what the officer would- I mean, what facts could you mount that would allow a jury to reach that conclusion? The fact that Mr. Carson knew that the car was an operative and- Only because Spencer had tried to crank it and had failed. And it wouldn't move. And so Carson jumps out of the car and starts running. Carson jumps out of the car with a gun in hand? Yes. No dispute about that? Correct. Never points that he takes off running away from the scene. So let me, if I can, I just want to take you back to your continuum. I like the way you're thinking about this. This is how I had to try to think about the case as well. The difficulty I'm having is that I plot your case between two other cases that I'd like you to comment on. One, you mentioned this Argueta case, where, as I understand it, the vehicle is moving very slowly toward the officers. This is not sort of a high-speed missile, but it's moving very slowly. And then the other one that you didn't mention is called Long v. Slayton, where the car's actually moving away from the officers. In both of those cases, we say no violation. Your car is sitting still, so it's not moving away where there's no violation. It's not moving forward slowly where there's no violation. It seems almost a fortiori to me that your case is a no-violation case. Couple of points. On the Argueta case, the car is moving slowly, but it's moving right towards the officer, and it's pinning him between the car that hit the defendant's car, which is approaching, and the police vehicle. So it is moving at a slow rate of speed, but he's being pinned between two vehicles. So there is some imminent danger there. The Long v. Slayton case is kind of very peculiar to its facts. That involved a mentally deranged person who stole a police cruiser. He steals the police cruiser, and he takes off with it. And this court says that creates a unique danger, because you have a police car being of law enforcement, and he goes on an effort to evade the police. So he's driving the vehicle in a way to evade the police in a dangerous situation. And isn't that sort of what we have here, though? You had the soft block. Your guy makes this sort of daring getaway, nearly hits the first officer. They have to pin him in again. I mean, he's already used the car as a weapon, in a sense, once, right? Well, the first time, the evidence indicates he didn't realize this was a police block. He only realized this after the first attempted block. If you recall, this is a situation where the city officers employed four police officers using two unmarked vehicles, an F-150 truck and a Ford Explorer SUV, to stop the defendant, or I'm sorry, the decedent, for not wearing seatbelts. It occurs at night, unmarked police vehicles. So the first attempt to squeeze him at an intersection for failure to wear the seatbelts, he doesn't realize at that point, because there's no markings on the car, that these are police officers. Now, at some point, one or two of them jump out of the vehicle. They have a vest on that says police. But it's only after he takes off, according to Mr. Carson, that the occupants of the vehicle realized that these were police officers. So the first stop really is not very helpful on the issue of, you know, whether or not the decedent understood this to be a police stop. Can I just bear down on that particular point of the story? I just want to make sure you and I are not talking past each other. I said, do you acknowledge that Mr. Spencer hit the police, the Explorer, or whatever? And you said, yes, I acknowledge that he did it on the second stop. You do not acknowledge that he did it on the first stop? I don't recall that he actually hit the, and the record, you know, will. It just is what it is. But I don't recall that he actually struck the vehicle, the police vehicles on the first one. I do know on the second one there was a collision, because that is what caused, apparently, what caused the decedent's vehicle to become an operative, that it was spun out. Just to return real quickly, then, to the continuum, you know, we have the McCulloch case. We have the Robinson versus Agueda, the Pace versus Copa, Bianco, and the Long versus Slayton, which suggests an imminent danger to the police. On the other hand, we have the Morton versus Kirkwood case, which indicates that the vehicle there was in park and was not in operation when the officer shot at the operator of the vehicle. But in that case, right, the court said there was no probable cause to believe that the suspect had committed any crime, let alone a serious crime involving the infliction or threatened infliction of serious physical harm, unlike this case where the guy spins out of the first block and nearly hits the officer. Right. The one difference I would suggest, though, is here, you know, when we talk about the severity of the crime, the initial crime, we're talking about failure to wear a seat belt. You know, we're not really talking about a serious crime. So when you look at the... Does the spin out of the first block, the first soft block not constitute a separate crime? Well... More dangerous than not wearing one seat belt? At that point, I think there's an issue of fact as to whether the decedent knew that these were police officers. Mr Carson says they didn't understand this was a police stop until after... Wouldn't it have been an aggravated assault with a deadly weapon, even if he assumed it was just John Q Public and not the cop? Well... Why does that make a difference? Maybe it's more flagrant with the police officer, but wouldn't it still be a violation of the penal code of the state to attempt to commit aggravated assault with a vehicle against a citizen who was not an officer? Well, it would be. I think, though, we have to look back also to the genesis of this whole stop situation, which was the crime at issue... The initial offense at issue here was the failure to wear a seat belt. Even assuming, Arguendo, the initial stop was no good. That's not the question I'm asking you. When that car almost strikes that pedestrian, whether an officer or not, would that not be an aggravated assault with a deadly weapon? It could very well be. Certainly would be probable cause for an officer to believe that. Let me put it to you that way. Yes. OK, so it doesn't matter whether or not he knew that the person whom he almost struck was a cop or not. That wouldn't denude the act of its felonious character, would it? Well, it may relate to his intent, because if he does not realize that this is a police stop and he feels like this is something... You know, there's two big unmarked vehicles. He doesn't know who is stopping him and who's trying to, you know, create this situation. So his intent might just be to try to... Yeah, I thought the better argument would be, you can't really dispute on this reference, on this record, that incident where, as he was pulling away, he almost hits the officer, whether he knew he was an officer or not. But that on round two, the car was inoperable, he did nothing and he was shot dead. And therefore, even if he was wrong on round one and was involved in a serious felony, that didn't give them justification to shoot him on multiple occasions on round two. That's what I thought the argument would be. Yes, I think that is, in essence, what... Thanks very much. You have reserved, and we'll give you the full four minutes. You were answering our questions. Thank you. Good morning. May it please the court. Austin Moore on behalf of the appellees. I guess I'll just jump right in with the... What I... The most important case, as it relates to this analysis, for me, is the Pace versus Capo Bianco case. And the most important holding that I took from that case was that where a suspect uses a vehicle in a reckless and threatening manner during a chase, officers then have probable cause to believe that that suspect is armed with a deadly weapon. So, at the point... I'll jump right to the second pinning. When Officer Zambito is confronted with that split-second decision, he has probable cause, and any reasonable officer in his situation would have probable cause to believe that Spencer is armed with a deadly weapon. And at that point, when he sees Officer Florin trying to exit the vehicle, he has to make a decision about whether or not to use deadly force to prevent imminent harm to Officer Florin. Let me ask the question this way. Does the police officer have the right to shoot someone driving the vehicle where the driver had earlier used the vehicle as a deadly weapon but is no longer and can no longer use that vehicle as a weapon or as a threat? Your answer would be no, wouldn't it? It's a good question. So, in our case, as it relates to Zambito... No, I'm just asking as a general matter. Round one, the weapon is used and misses the cop. Round two, some time later, they stop the vehicle and the vehicle is no longer operable. At that point, simply using the vehicle as posing a deadly threat, it's gone. Could they fire, shoot and kill the driver? Unequivocally, the vehicle is inoperable, the officer knows... Yes, sir, that's my fact pattern. ..and the suspect has surrendered? Yes, sir. Yes, it would be improper to use deadly force... It would be homicide. ..in those circumstances, yes. Because it's clear that there is no imminent threat. So, accepting what happens on round one, tell us why you're entitled to qualified immunity here as to round two. What is it about this? The case law... Well, your question earlier, is the most critical question and that is, from Officer Zambito's perspective, how would he know that Spencer was no longer presenting an imminent threat? He has no reason to know that. And more importantly, you asked, well, what facts could we possibly discern to get and say, you know, Officer Zambito should have known, which is, I mean, I'm giving you their best possible argument. Carson admits that Spencer was trying to start the car. He had not surrendered. He was making every effort to drive that vehicle. It's akin to if Spencer had a gun and it was unloaded, but he's pointing it at an officer and pulling the trigger. And the officer doesn't know whether or not there's any bullets left. That's basically what's going on. He's trying to start the car. The car may start, it may not start. And in fact, we don't know if the car did actually move at some point because Carson jumps out of the vehicle and runs away. Help me taking Carson's statement of the facts as the controlling evidence for our purposes. Carson says the driver tried to start the car, crank it up. He failed. Then Carson flees the car with a gun in his hand from the passenger side. And then the officer shoots. Is that the sequence? That is the sequence. The shooting, the first shooting doesn't occur until, by Carson's account, until Carson has fled weapon in hand. That's correct. Carson says, I'm out of the car, I'm running away, I'm carrying a firearm, and I hear the weapon bang, bang, bang. Yes. Once he realized the car wasn't going to start, he realizes they're done, so he jumps out of the vehicle. At some point, then he hears the shots. But Carson sheds no light on, or does he, on the officer's command to the driver, which the driver ignores and goes down to the, lunges down to the bottom. No. That testimony, the only testimony on that, comes from the officer on the outside. That's correct. The other instructive case, honestly, is Morton v. Kirkwood, where this court found that officers who used deadly force on a suspect that was in a vehicle were not entitled to qualified immunity. And it's precisely for the reasons that Judge Newsom identified. In that case, the underlying crime was not serious, as opposed to our case where we're dealing with aggravated assault with a deadly weapon, if we consider that it's a police officer that Mr. Spencer almost runs over in his attempt to avoid the first block. But in Kirkwood, they didn't have that. We have that in our case. The other grand factor about whether or not he was actively trying to evade, obviously, Mr. Spencer was trying to avoid arrest and capture at the time that force was used again. In the Morton v. Kirkwood case, we didn't have that. And finally, whether or not the suspect in Morton presented, or whether officers had probable cause to believe that that suspect was armed with a deadly weapon. In that case, the suspect hadn't done anything to make the officers think that he was going to use the vehicle as a deadly weapon, which is the exact opposite of our case. It is not disputed that Spencer tried to run over Officer Evanco at that initial block, committing an aggravated assault with a deadly weapon. At that point, every reasonable officer has probable cause to believe that Spencer is driving and has a deadly weapon while he's in that vehicle. Let me ask you a question about what you just said. Was it clear on this record that the driver would have known that the officer standing outside was indeed a police officer rather than just the pedestrian? Again, to the extent that he tried to run someone over, we still have— I understand that. Yes, it is clear. I'm asking a different question. Would it have been clear to the driver that that person was, in fact, a police officer? Yes, it would have been clear. So Officer Evanco had a vest on with the clear letters police across the front of his vest. In addition, even Carson admits in his testimony that the lights came on. He said no sirens, but there were lights that came on and that he knew the police were on us. These were unmarked cars, but the police lights went on when they tried to pull him over. That's correct, Your Honor, and then the lights remained on. So there's no dispute that they knew there were officers, and the officers believed they had given them fair warning that, hey, we're trying to initiate a traffic stop. We're asking you to pull over, and Spencer ignored those commands. A factual question. I don't think for a minute that we can or should discount Carson's testimony simply because it was unsworn given the circumstances. What about the bit about the post-accident investigation, the car still running? What's the story there? So there is factual evidence that the car moved after Carson got out and after the suspect was shot and that the car was, at least the engine, was running. But, again, I understand that I'm bound by Carson's testimony that, for what it's worth, that the car wouldn't crank. I don't know exactly what that means. What I was really sort of wondering about, and I don't recall whether this case was cited in the briefs or not, but that high-speed chase case that the Supreme Court had famously that had the dash cam, Scott v. Harris maybe, where the court said where allegations in an affidavit or a declaration contradict sort of cold, hard facts. And I wonder, is this the kind of cold, hard fact that contradicts the statement that the car wouldn't crank? So there was another case I was reading even just last night where there was a similar report that was purported to be cold, hard facts that the car was inoperable. And in that case, this court said, no, we want the dash cam, basically. The video is cold, hard facts. A report from the FDLE or some sort of investigative body wasn't enough to discount the sworn affidavit from somebody else. But your contention is it doesn't matter, Newsom. Whether the car was still running or not, he was trying to recrank it, and that's good enough. That's right. And whether the car was operable or not, we have to evaluate this from Officer Zambito's perspective objectively, and there's no way he knew that that car wasn't going to cause, wasn't going to be used to injure Officer Floren as he got out of that vehicle. Let me change the facts a little bit and have you help me with the answer to it. Assume, one, the car was inoperable on round two just before the shooting, two, Zambito knew it, and then had issued a command to the driver to raise his hands and come out, and instead the driver did quite the opposite. He lunged down as if to grab something. Could the officer have shot him? Yes, he could have. Would he still be entitled to qualified immunity even if he knew the car was inoperable? Given the totality of the circumstances,  by not obeying his commands, pose imminent threat to either the other officers or Officer Zambito himself. Did the officer see Carson leave the car armed before he shot? Officer Zambito did not see Carson, did not appreciate that he had left with the gun. Officer Evanco, who was the one that shot him. Who shot the second time, that was the second shooter. Yes, he did see Carson with the gun exit the vehicle, and I think he even testified he was concerned that because he already saw one gun leave the vehicle, there might be another gun in the vehicle, which is why when the suspect slumped over, he made the decision to use deadly force against him at that point. Unless you have any other questions, I'll yield my time back to the court. Thank you. Thank you. Just a couple of points. The defendants say that the Pace v. Capobianco case is their best case. There again, that case involved the engine, a car engine was running, the car was moving forward. There was an imminent threat of harm in that case. The situation in our case is completely different based on Mr. Carson's statement that the vehicle was no longer operative. At that point, the vehicle was no longer a deadly weapon, and so we believe this case, the case before the court today, is totally different from the Pace case as well as several of the other cases that we cited where the vehicle was operative and was, at the time, being used in a way that created an imminent danger of harm to the police officers. I might have misunderstood the reason that counsel was citing the Capobianco case, but I thought he was just saying, this is not a seatbelt case, this is an aggravated assault case. Capobianco gets me into aggravated assault land, at which point, in our excessive force cases, we look not only at the seriousness of the offense but also the immediacy of the risk. He says, as to seriousness of the offense, this is not a seatbelt case, it's an aggravated assault case. Now, as to immediacy of risk, we've been talking about Morton and McCullough and Long and those cases. Even if it's a serious offense, and I think the case of... Oh, we cited in our brief... Give me just a moment here. Vaughn v. Cox. That case indicates that merely attempting to evade the police officers from a stop or an arrest does not necessarily present an imminent threat of serious harm to the police officers. That case, another case that we've cited, indicates that it's the immediacy of the threat, not just the nature of the offense that the defendant or the decedent may be seeking to avoid. I think the only point made here is that Pace v. Capobianco is different in two respects. It's different, as you point out, because the car was moving before the shooting, whereas this car was not. But it's also different in that the prefatory crime is very different. Unlike Pace v. Capobianco, in this case, the vehicle was used as a deadly weapon, and they had, by your own concession, probable cause to believe there was an aggravated assault. So Capobianco is different in both respects. Yes. We'd also point out that the affidavit that Officer Zambito executed is very important, as we point out. The wording is very important, as we point out. He avers in his affidavit, not that he believed or feared that the vehicle would move. He states in his affidavit that the vehicle was accelerating and moving toward Officer Florin. Well, based on Mr. Carson's testimony, that does not appear to be possible. I think we're all assuming that Carson's got it right and Zambito's got it wrong, and now the question is, as a matter of law, whether there's a violation or a clearly established law. At least speaking for myself, I'm willing to discount everything Zambito says. Well, if the vehicle was inoperative, and if Officer Zambito is incorrect that it was accelerating and moving toward the officer, then we believe that there's an issue of fact in this case as to whether or not the officer... There was an imminent risk of harm to a fellow officer which would have warranted the use of deadly force. I think that's what it comes down to, and we think that under the cases out of this court, the answer to that would be that there was no imminent threat of harm, that the officer should not have shot at the driver, and therefore the summary judgment was improvidently granted. I will just close by saying in the McCullough v. Antolini case, where there was an imminent threat of harm, Judge Marcus began the opinion by calling it a tragic case. That involved a drug dealer who tried to evade the police. If that's a tragic case, then this is an extraordinarily tragic case based on the facts that you are familiar with as to how this case was begun. Thanks very much, and thank you both. Any of us disagree with that, by the way? Your client lost her son, and that is tragic. We'll proceed to the fourth and last case this morning.